# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP1213-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, <br>        Plaintiff-Respondent-Cross-Appellant, <br>    v. <br> Corey T. Rector, <br>        Defendant-Appellant-Cross-Respondent. |

ON CERTIFICATION FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | May 23, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 12, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|    COURT: | Circuit |
|    COUNTY: | Kenosha |
|    JUDGE: | Jason A. Rossell |

JUSTICES:

KAROFSKY, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET and HAGEDORN, JJ., joined. REBECCA GRASSL BRADLEY, J., filed an opinion concurring in part and dissenting in part, in which ZIEGLER, C.J., and ROGGENSACK, J., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-respondent-cross-appellant, there were briefs filed by *Winn S. Collins*, assistant attorney general, with whom on the briefs was *Joshua L. Kaul*, attorney general. There was an oral argument by *Winn S. Collins*, assistant attorney general.

For the defendant-appellant-cross-respondent, there were briefs filed by *Andrew R. Hinkel*, assistant state public

defender. There was an oral argument by *Andrew R. Hinkel,* assistant state public defender.

An amicus curiae brief was filed by *Katie R. York*, appellate division director, with whom on the brief was *Kelli S. Thompson,* state public defender, for the Wisconsin State Public Defender.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2020AP1213-CR
(L.C. No.  2018CF840)

STATE OF WISCONSIN                  :          IN SUPREME COURT

**State of Wisconsin,**

   **Plaintiff-Respondent-Cross-Appellant,**

**FILED**

   **v.**

**MAY 23, 2023**

**Corey T. Rector,**

Sheila T. Reiff
Clerk of Supreme Court

   **Defendant-Appellant-Cross-Respondent.**

---

KAROFSKY, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET and HAGEDORN, JJ., joined. REBECCA GRASSL BRADLEY, J., filed an opinion concurring in part and dissenting in part, in which ZIEGLER, C.J., and ROGGENSACK, J., joined.

---

APPEAL from an order of the Circuit Court for Kenosha County, Jason A. Rossell, Judge. *Affirmed.*

¶1   JILL J. KAROFSKY, J.   This case determines whether Corey Rector must comply with sex offender registration requirements for life under Wis. Stat. § 301.45(5)(b)1. (2021-22).[1]   Wisconsin's sex offender registration statute requires

---

[1] All subsequent references to the Wisconsin Statutes are to the 2021-22 version unless otherwise indicated.

lifetime registration when a "person has, on 2 or more separate occasions, been convicted . . . for a sex offense." Wis. Stat. § 301.45(5)(b)1. We are tasked with interpreting the phrase "separate occasions," and we determine that, in the context of this statute, the plain and ordinary meaning of "separate occasions" does not refer solely to the number of convictions. Consequently, the circuit court did not err by ordering Rector to register as a sex offender for fifteen years rather than until his death because his five convictions for possession of child pornography were filed in a single case and occurred during the same hearing. We also hold that the circuit court did not err in finding Rector ineligible to participate in the Earned Release Program (ERP).

## I. BACKGROUND

¶2 The State filed a criminal complaint charging Rector with ten counts of possession of child pornography in violation of Wis. Stat. § 948.12(1m) after seizing over 1,000 offending images and videos in Rector's possession. During a single hearing, Rector pled guilty to five out of ten counts of possession of child pornography.[2] The circuit court[3] sentenced Rector to eight years initial confinement and ten years of extended supervision on each of the five counts to be served

---

[2] Pursuant to the plea agreement, the other five counts of possession of child pornography were dismissed and the State agreed not to issue any additional charges based on the other discovered images.

[3] The Honorable Jason A. Rossell of the Kenosha County Circuit Court presided.

concurrently and ordered Rector to comply with sex offender registration requirements for fifteen years. The court found Rector ineligible to participate in the ERP, in relevant part because the offense was not a "substance abuse crime."

¶3 The Department of Corrections (DOC) requested the circuit court amend the Judgment of Conviction (JOC) because it believed Wis. Stat. § 301.45(5)(b)1. required Rector to register as a sex offender for life. The circuit court denied the motion to amend the JOC, determining that § 301.45(5)(b)1. did not require lifetime registration because the convictions did not occur on "separate occasions." The State cross-appealed the denial of the motion to amend.

¶4 Rector also filed a postconviction motion to amend the JOC on the basis that the court improperly determined he was not eligible to participate in the ERP. The circuit court denied Rector's motion for two reasons: (1) the circuit court explained that it only authorizes eligibility to participate in the ERP when substance abuse "directly goes to the criminogenic factor that caused the crime" and that was not the case here; and (2) the circuit court was concerned that participation in the ERP could lead to release before the defendant had served the statutory minimum sentence. Rector filed an appeal challenging the denial of his motion to amend the JOC.

¶5 The court of appeals certified the cross-appeal pursuant to Wis. Stat. § (Rule) 809.61 because, in its view, the plain meaning of "separate occasions" in Wis. Stat. § 301.45(5)(b)1. appears to conflict with this court's decisions

3

in State v. Wittrock, 119 Wis. 2d 664, 350 N.W.2d 647 (1984), and State v. Hopkins, 168 Wis. 2d 802, 484 N.W.2d 549 (1992). We accepted certification and consequently also took jurisdiction over Rector's appeal.

## II. ANALYSIS

¶6 We begin by addressing the State's cross-appeal regarding Wis. Stat. § 301.45(5)(b)1. and determine that convictions based on charges filed in a single case and occurring during the same hearing have not occurred on "2 or more separate occasions." Therefore, the circuit court did not err in requiring Rector to comply with registration requirements for only 15 years. We then address Rector's appeal and determine that the circuit court did not erroneously exercise its discretion in finding Rector ineligible to participate in the ERP.

### A. Sex Offender Registration Requirements

¶7 When a person is ordered to comply with sex offender registration requirements, Wisconsin's statutes offer two options for how long those requirements extend——15 years or until the offender's death. Wisconsin Stat. § 301.45(5)(a) governs when a person must comply with registration requirements for 15 years, and § 301.45(5)(b) governs when a person must comply for life. Sections 301.45(5)(b)1., 1m., and 2. require lifetime registration when applicable criteria are met. Section 301.45(5)(b)3. gives a circuit court discretion to otherwise order lifetime registration. We note that this opinion does not address § 301.45(5)(b)3., and as such it does not affect a

4

circuit court's discretion to otherwise order lifetime registration.

¶8 We must interpret Wis. Stat. § 301.45(5)(b)1. to determine whether a person who has been convicted on multiple counts of possession of child pornography filed within a single case and whose convictions occurred during the same hearing must comply with the sex offender registration requirements for life. This is a question of statutory interpretation that we review de novo. State v. Forrett, 2022 WI 37, ¶5, 401 Wis. 2d 678, 974 N.W.2d 422.

¶9 In addressing Wis. Stat. § 301.45(5)(b)1., we first discern its plain meaning based on the language and context of the statute. We next address this court's prior decisions in Wittrock and Hopkins, which interpreted similar language in Wis. Stat. § 939.62, and explain why those decisions do not dictate our interpretation of § 301.45(5)(b)1. in this case.

1. The Plain Meaning of Wis. Stat. § 301.45(5)(b)1.

¶10 "Statutory interpretation begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quotations omitted). In discerning plain meaning, we use the "common, ordinary, and accepted meaning" of words and give "technical or specially-defined words or phrases" their "technical or special definitional meaning." Id. Both context and structure of a statute are important to meaning, and

5

"[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." Id., ¶46.

¶11 Wisconsin Stat. § 301.45(5)(b)1. reads:

(b) A person who is covered under sub. (1g)(a), (b), (bm), (c), (d), (dd), (dp) or (e) shall continue to comply with the [sex offender registration] requirements of this section until his or her death if any of the following applies:

1. The person has, on 2 or more separate occasions, been convicted or found not guilty or not responsible by reason of mental disease or defect for a sex offense, or for a violation or the solicitation, conspiracy or attempt to commit a violation, of a federal law, a military law, a tribal law or a law of any state that is comparable to a sex offense.

We are asked to determine what it means to be convicted "on 2 or more separate occasions."[4] The State argues that a person meets the criteria of being convicted "on 2 or more separate occasions" when that person has been convicted of two or more offenses. Rector argues that a person fails to meet the criteria of being convicted "on 2 or more separate occasions" when that person is convicted based on charges filed in a single case, and the convictions occur during the same hearing. According to Rector, the State's interpretation of the statute reads out the phrase "separate occasions" altogether. We agree with Rector that the plain and unambiguous meaning of the phrase "separate occasions," given the context of § 301.45(5)(b)1., means that convictions based on charges filed in a single case

---

[4] The parties do not dispute that Rector was convicted of a sex offense, which is defined to include "a violation . . . of s. . . . 948.12." Wis. Stat. § 301.45(1d)(b).

6

and occurring during the same hearing do not constitute convictions on "separate occasions."

¶12 We begin by defining the phrase "separate occasions." "Separate" means "set or kept apart: disunited." Separate, The American Heritage Dictionary of the English Language 1645 (3d ed. 1992). An "occasion" is "an event or a happening; an incident"; or a "time at which an event occurs." Occasion, The American Heritage Dictionary of the English Language 1250 (3d ed. 1992). Taken together, a separate occasion is an incident or time at which an event occurred, which is set apart from another incident or time at which a different event occurred.

¶13 The relevant portion of Wis. Stat. § 301.45(5)(b)1. says that a person must comply with registration requirements until his or her death if "[t]he person has, on 2 or more separate occasions, been convicted . . . for a sex offense . . . ." It is clear from the sentence structure that the "2 or more separate occasions" phrase is modifying the conviction for a sex offense rather than the commission of a sex offense. The statute refers to one who has "been convicted" for a sex offense on separate occasions rather than one who "has committed" a sex offense on separate occasions. Furthermore, the statute is generally focused on various possible dispositions of a case——referencing conviction, a finding of not guilty or not responsible by reason of mental disease or defect, a reversed conviction, or a reversed finding of not guilty or not responsible by reason of mental disease or defect——rather than making any reference to the details surrounding the

7

commission of an offense. As such, a person must comply with registration requirements for life if the event of conviction occurred at two or more separate (set apart) times.

¶14 Given the above framework, we must determine whether the convictions in this case——which were filed in a single case and occurred during the same hearing——constitute convictions on "separate occasions." The common understanding and use of the phrase "separate occasions" makes clear that Rector's convictions fall outside the scope of § 301.45(5)(b)1.

¶15 Rector offers an illustrative example of the common usage of separate occasions in his briefing: if a person goes to the store and buys two apples, one right after the other, have they purchased apples on two separate occasions? No. Clearly, the transactions happened on one occasion. Conversely, if a person said they purchased apples on two separate occasions, it is evident that the apple-purchaser took two trips to the store.

¶16 The United States Supreme Court also recently considered the ordinary meaning of the word "occasion" in Wooden v. United States, determining that "occasion" commonly refers to an "event, occurrence, happening, or episode" which "may itself encompass multiple, temporally distinct activities." 142 S. Ct. 1063, 1069 (2022). The Court offered the occasion of a wedding, which often includes a ceremony, cocktail hour, dinner, and dancing, as an example of one occasion with various activities that take place at different times. Id. In the context of criminal behavior, the Court held that an "occasion" "may, in common usage, include temporally discrete offenses." Id. at

8

1070. More specifically the court determined that, "[Wooden's] one-after-another-after-another burglary of ten units in a single storage facility occurred on one 'occasion.'" Id. at 1069. The United States Supreme Court's analysis is, of course, not binding on this court in matters of state statutory interpretation, but the analysis is a persuasive example of the common understanding of the term "occasion."

¶17 Wisconsin Stat. § 301.45(5)(b)1.'s use of the term "separate" to modify "occasions" further assists us. Convictions that are filed in a single case and pronounced within the same hearing are not significantly "set apart" or "disunited," and so are not "separate occasions." On the contrary, when a court pronounces convictions from the same case in a single hearing, those convictions are united by both temporal proximity and by the same case filing.

¶18 Given the common and ordinary understanding of the phrase "separate occasions" as shown through examples and dictionary definitions, we hold that Rector's convictions did not take place on "separate occasions." Like different apples purchased during the same trip to the store, or different activities occurring at the same wedding, Rector's multiple convictions occurred during the same "occasion."

¶19 In contrast, the State fails to offer any textual reading which gives effect to the phrase "separate occasions." The State reads the statute as if it required a person to comply with lifetime registration if that "person has twice been convicted." But the statute actually reads if a "person has, on

9

2 or more separate occasions, been convicted . . . ." By ignoring "separate occasions" the State renders it surplusage. However, "[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." Kalal, 271 Wis. 2d 633, ¶46. The legislature used the phrase "separate occasions." We must attempt to give effect to every word, and as such, we hold that when a person is convicted based on charges filed in a single case during the same hearing, then those convictions have not occurred on "separate occasions."[5]

2. Wittrock, Hopkins, and Wis. Stat. § 939.62(2)

¶20 Although the meaning of the statute is clear from its text, the State argues that our reading of Wis. Stat. § 301.45(5)(b)1. should be informed by this court's prior interpretation of the term "separate occasions" in the context of the criminal repeater statute, § 939.62(2), which reads as follows:

> The actor is a repeater if the actor was convicted of a felony during the 5-year period immediately preceding the commission of the crime for which the actor presently is being sentenced, or if the actor was convicted of a misdemeanor on 3 separate occasions during that same period, which convictions remain of record and unreversed.

---

[5] The facts of this case—where Rector's convictions were filed in a single case and occurred during the same hearing— provide a sufficient basis to determine that the convictions did not occur on separate occasions. We leave for another day whether or not convictions that only meet one of those two conditions have occurred on separate occasions.

10

We addressed the term "occasions" within this criminal repeater statute in two cases: State v. Wittrock, 119 Wis. 2d 664 and State v. Hopkins, 168 Wis. 2d 802.

¶21 In the first case, Wittrock was sentenced as a repeater after pleading guilty to misdemeanor charges and having previously been convicted of three misdemeanors within the preceding five years. Wittrock, 119 Wis. 2d at 665. Wittrock had been convicted of two of his prior misdemeanors on the same day during the same hearing, although the conduct that gave rise to each conviction occurred on separate days and was indisputably not part of the same course of conduct. Id. at 666. Wittrock argued that the phrase "convicted of a misdemeanor on 3 separate occasions" required three separate court appearances in order to qualify as a repeater. Id. The court ultimately disagreed and affirmed Wittrock's sentence. Id.

¶22 The court in Wittrock determined that the word "occasion," as used within § 939.62, was ambiguous, and defined the plain meaning of "occasion" as "happening, incident." Id. at 670-71 (quoting Webster's New Collegiate Dictionary 794 (1977)). Then, with little analysis of the surrounding words of the statute, the court held that the term is ambiguous in the context of the repeater statute because the "incident" referred to could be either the "incident" of the commission of the crime or the "incident" of conviction. Id. Determining the language to be ambiguous, the court then looked to legislative intent——and particularly the legislative history

11

and purpose of the repeater statute——as was an accepted approach to statutory interpretation at the time.[6]  Id. at 671.  The court turned to a law review article which recapped the author's involvement on the advisory committee which worked on the 1949 revisions to the criminal code, including relevant revisions to the criminal repeater statute.  Id. at 671-73 (referencing William A. Platz, The 1949 Revision of the Wisconsin Code of Criminal Procedure, 1950 Wis. L. Rev. 28).  The court also reviewed the 1949 committee comment on the repeater statute. Id. at 673.  The court concluded that both sources reflected the committee's intent to shift focus from prior sentences onto prior crimes and to focus on the quantity of crimes rather than the time of conviction.  Id. at 673-74.

¶23 Finally, the court determined that the purpose of repeater statutes, "[r]egardless of the particular phraseology," "is to serve as a warning to first offenders.  Id. at 675.  The infliction of more severe punishment for a repeater is based upon his persistent violation of the law after conviction for previous infractions."  Id. (quoting State v. Midell, 40 Wis. 2d 516, 527, 162 N.W.2d 54 (1968)).  The court determined that the legislative history and purpose of the statute were not consistent with a reading of the term "occasion" which referred to the timing of the conviction.  Id. at 673-74.  As a result,

---

[6] We have since clarified that, "[j]udicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute."  See State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.

the court concluded that convictions for misdemeanors within the same hearing, but based on criminal activity that occurred independent of each other and on separate days, were convictions on "separate occasions." Id. The court explicitly left open the question of whether convictions based on criminal activity committed as part of the same course of conduct constitute convictions on "separate occasions." Id. at 668.

¶24 In Hopkins, the court addressed the question left open in Wittrock: whether multiple misdemeanors committed within the same course of conduct constituted convictions on "separate occasions" under the repeater statute. Hopkins, 168 Wis. 2d at 805-08. The court held that the ambiguous term "occasion" referred to the number of the defendant's convictions and not to the criminal acts giving rise to such convictions. Id. at 805, 807-10. The court in Hopkins again relied heavily on the underlying purpose of the repeater statute. Id. at 811-13.

¶25 While the operation of the criminal repeater statute appears to be settled,[7] it does not follow that such operation is

---

[7] The legislature made changes to Wis. Stat. § 939.62 at various times since this court's decisions in Wittrock and Hopkins and did not make any changes to the "separate occasions" language, indicating possible legislative acquiescence in the court's interpretation within the context of that statute. See Estate of Miller v. Storey, 2017 WI 99, ¶51, 378 Wis. 2d 358, 903 N.W.2d 759 ("legislative inaction in the wake of judicial construction of a statute indicates legislative acquiescence").

The concurrence/dissent misfires when it attacks the majority for pointing out inconsistencies in the Wittrock and Hopkins decisions without overruling those cases. Concurrence/dissent, ¶85. We reiterate that this case is not about whether to overrule Wittrock and Hopkins but whether we

13

necessarily transposed onto the sex offender registration statute.  Prior interpretation by this court may be helpful in a plain meaning analysis when the court has defined a legal term of art or addressed the context of a closely related statute.[8] See Kalal, 271 Wis. 2d 633, ¶¶45-46.  This is sometimes referred to as the "prior-construction" canon of statutory interpretation.  See Lightfoot v. Cendant Mortg. Corp., 580 U.S. 82, 95-96 (2017).  However, the court's decisions in Wittrock and Hopkins do not dictate our decision in this case for three reasons: (1) Wittrock and Hopkins were not merely defining the term "occasion" but analyzing what the term referred to in the unique context of the criminal repeater statute; (2) neither "occasions" nor "separate occasions" are terms of art; and (3) Wisconsin's sex offender registration statute, Wis. Stat. § 301.45, and criminal repeater statute, § 939.62, are not so closely related as to dictate a singular usage of the term.  We more fully explain each of these reasons in turn.

### a.  Context and Legislative History

¶26  The court in Wittrock was not grappling with the plain meaning of the term "occasion" in isolation.  Rather the court

---

should extend those cases' interpretation of Wis. Stat. § 939.62 to a different statute.

[8] The concurrence/dissent confusingly claims that the majority opinion "holds, at least implicitly, that prior construction is irrelevant to plain meaning." Concurrence/dissent, ¶56.  On the contrary, we explicitly recognize that prior-construction is relevant to plain meaning in certain circumstances.

14

was determining what the term "occasion" meant within the context of the criminal repeater statute. The court's dictionary definition of the term "occasion"——"happening, incident"——is consistent with the definition we present above. Wittrock, 119 Wis. 2d at 670 (quoting Webster's New Collegiate Dictionary 794 (1977)). The bulk of Wittrock's analysis attempts to discern whether "occasion" refers to the incident of the commission of the crime or the incident of conviction. Of import, any analysis in Wittrock where we tried to resolve the ambiguity of "occasion" is irrelevant here since we recognize that "occasion" in Wis. Stat. § 301.45(5)(b)1. unambiguously refers to the incident of conviction.

¶27 Additionally, the Wittrock analysis focuses on the legislative history and purpose of the criminal repeater statute, which is entirely different than the legislative history and purpose of the sex offender registration statute. As to the sex offender registration statute's legislative history, the State argues that there are three documents relevant to our analysis: (1) a DOC report in the statute's drafting file, (2) a DOC fiscal estimate for the statute, and (3) a Legislative Council memorandum discussing a related, but different statute. We decline to give much weight to these sources. These three sources are less persuasive than the Wittrock sources——a law review article penned by a drafter of the statute and a committee comment——because they differ in

form, authorship, and clarity with which they demonstrate legislative intent.[9] We consider each source in turn.

¶28 First, the DOC report is not a reliable indicator of legislative intent. Legislators are not bound to follow, or even consider, a DOC report when drafting and enacting a statute. Additionally, the DOC report does not comment on the meaning of "separate occasions."

¶29 The other two pieces of legislative history are equally unenlightening. A DOC fiscal estimate references "two or more separate sexual assault convictions" and a Legislative Council memorandum references a situation where a person "has committed crimes . . . on two or more occasions." DOC, Fiscal Estimate – 1995 Session for 1995 Wis. S.B. 182 (May 25, 1995); Wis. Legis. Council Staff, Information Memorandum 96-18 3 (July 12, 1996). Not only do these two sources appear to work against each other, with one source referencing convictions and the other the commission of crimes, but more importantly, neither source reflects or addresses the language actually implemented in Wis. Stat. § 301.45(5)(b)1. At bottom, these three sources fail to illuminate our reading of the statute.

---

[9] Perhaps recognizing the significant differences between the three sources in this case and the sources in Wittrock, the concurrence/dissent contends that one might draw reasonable inferences from the three proffered sources that are "analogous" to the inferences drawn by this court in Wittrock. Concurrence/dissent, ¶101. The concurrence/dissent argues we should be bound to the history-based interpretation in Wittrock because of those analogous inferences. This proposition runs contrary to this court's customary approach to statutory interpretation.

16

¶30 In summary, the portions of Wittrock——and by extension, Hopkins——that are inconsistent with our analysis are all based on considerations that are irrelevant or inapplicable in the current context. Although the legislative history in Wittrock may have clarified the intent of the legislature regarding the criminal repeater statute, the legislative history of Wis. Stat. § 301.45(5)(b)1. offers no analogous level of clarity.

b.  Terms Of Art

¶31 Neither Wittrock nor Hopkins treated the term "occasion" or the phrase "separate occasions" as a legal term of art.  A phrase can at times take on a specialized meaning that differs from its common, ordinary meaning, becoming a term of art.[10]  If a phrase has taken on a specialized legal meaning, then this court should attempt to discern that specialized meaning, and prior judicial interpretations of the same phrase can be a helpful tool in discerning that specialized meaning.[11]

---

[10] A term of art is "[a] word or phrase having a specific, precise meaning in a given specialty, apart from its general meaning in ordinary contexts."  Term of Art, Black's Law Dictionary (11th ed. 2019).

[11] See Wis. Stat. § 990.01(1) ("All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning."); see also Mueller v. TL90108, LLC, 2020 WI 7, ¶19, 390 Wis. 2d 34, 938 N.W.2d 566 ("The statutes themselves do not define the relevant terms.  However, the [relevant] statutory terms . . . are technical phrases with specific and distinct meaning in our common law, and we therefore give them their accepted legal meaning.").

17

The Wittrock and Hopkins courts considered the word "occasion" ambiguous in the context of the repeater statute and sought to define the ordinary meaning within that context, primarily by looking to the legislative history and purpose of the statute. We likewise believe the phrase "separate occasions" is not a legal term of art, but should be given its plain, ordinary meaning.  Because the phrase is not a legal term of art, it is of limited value for us to look to a case that defines the same phrase but does so under a different statute and pays particular attention to the legislative history and purpose of that statute.[12]

c.  Closely Related Statutes

¶32  Finally, Wis. Stat. § 301.45(5)(b)1. is not so closely related to § 939.62(2) that the court must interpret all words and phrases in a singular way to avoid confusion or absurd results.  This represents the primary point of contention between our reading of the statute and the concurrence/dissent's.  Both the State and the concurrence/dissent rely on the prior-construction canon to say

---

[12] The concurrence/dissent appears to claim that any word or phrase that has been authoritatively construed in a particular context becomes a legal term of art that must forevermore be given that construction. Concurrence/dissent, ¶67.  This court has never defined the concept of a legal term of art that broadly and doing so would severely limit the legislature's ability to use common language in its common and ordinary sense.  Putting that aside, we emphasize that the definition of "occasion" that we employ is consistent with the definition used in Wittrock and Hopkins.  Neither case offers a separate technical definition for the phrase "separate occasions" that we could apply in this case.

18

that the interpretations of <u>Wittrock</u> and <u>Hopkins</u> should be incorporated into Wis. Stat. § 301.45(5)(b)1. The prior-construction canon is an articulation of the principle that when a particular phrase has been given authoritative construction by the courts, it is to be understood according to that construction. Although this principle is at its strongest when the court is interpreting a reenactment of the same statute, it has also been applied to interpretations of related statutes——although, as the concurrence/dissent concedes, "with less force." <u>See</u> concurrence/dissent, ¶66 (quoting Antonin Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 322).[13]

¶33 We begin by acknowledging that members of this majority have previously voiced their position that canons of construction are tools in a toolbox of statutory interpretation and should not be seen as inflexible rules of construction that override the plain meaning of otherwise unambiguous statutes.[14] This position hardly "degrades" or "demeans" the canons, as supporters of their use have spoken similarly. <u>See</u> concurrence/dissent, ¶¶80, 82; <u>See also</u>, e.g., Neil M. Gorsuch, <u>Lecture, Of Lions and Bears, Judges and Legislators, and the</u>

---

[13] Despite this concession, the concurrence/dissent charges ahead, applying the canon with full force in this case. In fact, that opinion relies so heavily on this single canon that it fails to engage in a plain meaning analysis of the words of the text beyond application of the canon.

[14] See <u>James v. Heinrich</u>, 2021 WI 58, ¶76, 397 Wis. 2d 517, 960 N.W.2d 350 (Dallet, J., dissenting).

19

_Legacy of Justice Scalia_, 66 Case W. Res. L. Rev. 905, 917 (2016) (referring to the use of canons as "judges pull[ing] from the same toolbox").

¶34  In this case, however, we need not debate the general usefulness of canons of construction because even viewed as the concurrence/dissent presents, the prior-construction canon does not aid in our analysis here for two reasons.  First, no single canon of construction will always take precedence over all other principles of construction.[15]  And second, the canon does not govern in this case.  Absent the use of a "term of art," the prior-construction canon only governs if the different statutes at issue are "closely related."  On this point everyone appears to agree.  See concurrence/dissent, ¶¶94, 107.

¶35  "Statutes are closely related when they are in the same chapter, reference one another, or use similar terms." _State v. Reyes Fuerte_, 2017 WI 104, ¶27, 378 Wis. 2d 504, 904 N.W.2d 773.  Here the two statutes do not fit the definition of closely related.  It is undeniable that the two statutes reside in different chapters governing different subject matter.  There are no cross references between § 301.45 and § 939.62, and the statutes do not rely on each other or otherwise interact.

---

[15] In fact, there is a canon for that——the "Principle of Interrelating Canons," which suggests that "[n]o canon of interpretation is absolute.  Each may be overcome by the strength of differing principles that point in other directions."  See Antonin Scalia & Bryan A. Garner, _Reading Law: The Interpretation of Legal Texts_ 59.

¶36 The State insists that since both statutes reference convictions on "separate occasions," they use "similar terms" and are thus closely related.[16] We disagree because the legislature's limited use of general terms is hardly enough on its own to make the statutes closely related.

¶37 As an illustrative example, contrast this case with the related statutes in Bragdon v. Abbott, in which The United States Supreme Court applied the prior-construction canon. 524 U.S. 624 (1998). Bragdon interpreted the provision of the Americans with Disabilities Act (ADA) which defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." See id. at 630. In interpreting that definition, the Court looked to how courts and agencies had applied the definition of "handicapped individual" in the Rehabilitation Act of 1973. Id. at 631. The court noted that the entire definition in the ADA "is drawn almost verbatim" from the Rehabilitation Act of 1973. Id. Furthermore, the ADA included a statutory provision directing that "nothing in this chapter shall be construed to apply a lesser standard than the standards applied under Title V

---

[16] The concurrence/dissent also says that "the justification for applying the canon seems particularly strong when the phrase at issue seldom appears in the Wisconsin statutes." Concurrence/dissent, ¶94. This statement appears entirely unsupported by any authority on the prior-construction canon and the opinion fails to explain why this would be so.

21

of the Rehabilitation Act of 1973" which created a direct link between those Acts.[17] Id. at 631-32.

¶38 There is no such direct link between the sex offender registration statute and the criminal repeater statute. Each uses the phrase "separate occasions," but the surrounding structure and language of each statute is far from identical. For example, Wis. Stat. § 939.62(2) looks to "the 5-year period immediately preceding the commission of the crime for which the actor presently is being sentenced," while § 301.45(5)(b)1. does not include a time period and does not refer separately to the current conviction, but simply looks to whether a person "has, on two or more separate occasions, been convicted."[18] Unlike the ADA in Bragdon, which not only included a nearly identical definition from the Rehabilitation Act, but also directly referenced that same act, nothing about the language used in Wis. Stat. § 301.45(5)(b)1. indicates that the legislature looked to or copied Wis. Stat. § 939.62(2).

---

[17] See also United States v. Davis, 588 U.S. __, 139 S. Ct. 2319, 2329 (2019) where the Court applied a consistent meaning to terms used in two statute's definitions of "crime of violence." Both statutes were within the criminal code and the definitions had "almost identical" language. Id. The referenced definitions shared over 25 identical consecutive words.

[18] Wisconsin Stat. § 939.62(2) also uses the language "which convictions remain of record and unreversed," while § 301.45(5)(b)1. uses different language to accomplish a similar end, and provides that "[a] conviction or finding of not guilty or not responsible by reason of mental disease or defect that has been reversed, set aside or vacated is not a conviction or finding for purposes of determining . . . whether a person has been convicted on 2 or more separate occasions."

¶39 The primary link between the two statutes is their practical application, namely that both statutes may be relied upon during the sentencing of a criminal defendant. And although the phrase "separate occasions" will be applied differently depending on whether the defendant is being sentenced as a criminal repeater under § 939.62(2) or is being required to comply with registration requirements under § 301.45(5)(b)1., any inconsistency or confusion is outweighed by the clear and plain meaning of § 301.45(5)(b)1.

¶40 Even in its strongest form, the prior-construction canon merely creates a presumption that the legislature intended to incorporate the court's prior interpretation of a word or phrase in closely related statutes. But that presumption is not meant to counteract our oft-quoted principle that "statutory language is given its common, ordinary, and accepted meaning" and "if the meaning of the statute is plain, we ordinarily stop the inquiry." See State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.[19] The presumption is meant to add clarity, not sow confusion. In other words, fundamentally, we must presume that the legislature means what it says. See Heritage Farms, Inc. v. Markel Ins. Co., 2009 WI 27. ¶14 n.9, 316 Wis. 2d 47, 767 N.W.2d 652.

---

[19] One might also find an articulation of this principle in the "ordinary-meaning canon," which Scalia and Garner characterize as "the most fundamental semantic rule of interpretation." See Scalia & Garner, Reading Law at 69.

23

¶41 Given that Wis. Stat. § 301.45(5)(b)1. does not require Rector to comply with registration requirements for life because he was convicted of five offenses all within a single case and during the same hearing, and thus was not convicted on "2 or more separate occasions," the circuit court did not err when it required registration for only 15 years.

## B. Rector's Crimes

¶42 Having explained our reasoning and dispensed with the counter arguments, we should be done with our analysis. However, before concluding, we are compelled to respond to the concurrence/dissent's accusations charging that this opinion omits the details of the images found in Rector's possession and in doing so both "trivializes heinous crimes against children" and ignores the statutory purpose of public protection. See concurrence/dissent, ¶¶57, 107. Neither accusation holds water. This opinion omits the details of the images not to trivialize Rector's crimes but rather because the seriousness of Rector's crimes is irrelevant to the question of statutory interpretation before us. As to the statutory purpose, we attempt to honor that purpose by deferring to the legislature's policy decisions as expressed in the words of the statute.

¶43 In cases such as this, which involve serious criminal conduct perpetrated against innocent and vulnerable victims, attorneys and judges must balance the need for addressing the facts of the case with the victim's interest in privacy, sensitivity, and respect. Achieving this balance can be challenging. Undoubtedly, there are cases where a description

24

of an assault is relevant and significant to the question at issue. Clearly, this is not that case. Here we are faced with a straight-forward question of statutory interpretation. As such, the details of the content of the images discovered in Rector's possession are irrelevant. Instead, the only relevant facts are the circumstances surrounding Rector's convictions, as sufficiently detailed in this opinion.[20]

¶44 There is no disagreement in this case that Rector's crimes were serious. The statutory language of Wis. Stat. § 301.45(5)(b)1., however, does not hinge on whether this court concludes that Rector's crimes were serious. It is undisputable that all sex offenses covered by the sex offender registration statutory scheme are heinous in nature, thus necessitating the use of the registry for the protection of the public. However, within that scheme, the legislature, not this court, made policy decisions regarding which offenders are categorically required to comply with registration requirements for life and which are required to comply for 15 years.[21] Our job is to faithfully interpret the words of the statute in order to discern the

---

[20] Conversely, an example of a legal question that may necessitate some description of the assaults is if we were asked to determine if the content of the images constituted child pornography. It is undisputed in this case that the images constitute child pornography.

[21] In addition to requiring lifetime registration for those convicted of a sex offense on two or more separate occasions, Wis. Stat. § 301.45(5)(b)1m. also lists specific crimes for which a single violation requires the offender to comply with registration requirements for life. Possession of child pornography could have been, but was not, included on that list.

25

legislature's policy choice, not to impose our own policy choices.

¶45 Nonetheless, our colleagues accuse this opinion of endangering "some of the most vulnerable members of the public." Concurrence/dissent, ¶99. That is simply not the case. Importantly, nothing in this opinion undermines the ability of a circuit court to order an offender to comply with registration requirements for life, even if the offender is not otherwise required by the statutes to register for longer than fifteen years under Wis. Stat. § 301.45(5)(b)3. Said differently, this opinion does not give any sex offender blanket protection from lifetime registration.

¶46 In Rector's case, the State did not ask the circuit court to order that Rector comply with registration requirements for life under § 301.45(5)(b)3. The State only requested lifetime registration under § 301.45(5)(b)1., and that is the only legal question we address today. It is irresponsible to suggest that we are endangering vulnerable members of the public by narrowly addressing the legal issue before us.

C. Eligibility For The Earned Release Program

¶47 We now turn to Rector's appeal challenging the circuit court's finding that Rector was ineligible to participate in the ERP. We review the circuit court's sentencing decision to deny a defendant participation in the ERP for an erroneous exercise of discretion. Wis. Stat. § 973.01(3g) ("the court shall, as part of the exercise of its sentencing discretion, decide whether the person being sentenced is eligible or ineligible to

26

participate in the earned release program."). A court has erroneously exercised its discretion if it imposes sentence "without the underpinnings of an explained judicial reasoning process," State v. Loomis, 2016 WI 68, ¶30, 371 Wis. 2d 235, 881 N.W.2d 749 (quoting McCleary v. State, 49 Wis. 2d 263, 278, 182 N.W.2d 512 (1971)), or if it holds a "predisposition . . . so specific or rigid so as to ignore the particular circumstances of the individual offender." State v. Ogden, 199 Wis. 2d 566, 573, 544 N.W.2d 574 (1996).

¶48 Rector argues that the circuit court erroneously exercised its discretion because it employed a "preconceived policy of sentencing that is 'closed to individual mitigating factors.'" Id. at 571 (quoting State v. Martin, 100 Wis. 2d 326, 327, 302 N.W.2d 58 (Ct. App. 1981)).

¶49 In Ogden, we remanded for resentencing because the circuit court denied the defendant Huber release[22] for child care purposes based on an impermissible preconceived sentencing policy. Id. at 572. The circuit court stated that it did not allow Huber privileges for child care except in "extreme circumstances" because "number one, it is all too often abused. Somebody becomes real interested in a child only after they have been sentenced to jail . . . ." Id. Thus, the circuit court in Ogden not only espoused a preconceived sentencing policy, but used generalized references to the likelihood of abuse and other

---

[22] Huber release grants leave privileges to county jail prisoners for purposes such as employment, healthcare, attending to family needs, and more. See Wis. Stat. § 303.08.

defendants' past involvement with their children to justify its decision rather than assessing the defendant's specific relationship and involvement with her child and her likelihood of abusing Huber privileges.

¶50 The record before us is distinguishable from Ogden. In this case, the circuit court set forth a sentencing policy that inherently relied on individualized factors——namely, whether substance abuse goes "to the criminogenic factor that caused the crime." The circuit court went on to explain: "So if there's an operating while intoxicated case or maybe a domestic violence case in which alcohol was used or in some way, shape[,] or form the substance abuse was the reason for the crime." The circuit court explicitly explained that it approves eligibility for the ERP if substance abuse "was a reason for the crime" but "[i]n this case it's a possession of child pornography." This is sufficient to show that the circuit court was not "closed to individual mitigating factors." Id. at 571. The court simply found that Rector's individual mitigating factors did not warrant eligibility in the ERP. The circuit court did not erroneously exercise its discretion by denying Rector eligibility for participation in the ERP. Because we affirm the circuit court's decision on these grounds, we do not address the circuit court's other grounds for denying eligibility.

### III. CONCLUSION

¶51 We affirm the circuit court's order denying the State's request to amend the JOC as Wis. Stat. § 301.45(5)(b)1. does not require that Rector comply with registration

requirements until his death.  Rector's five convictions for possession of child pornography were filed in a single case and occurred during the same hearing.  Consequently, the convictions did not occur on separate occasions.  We also affirm the circuit court's order denying Rector's request to amend the JOC as the circuit court did not erroneously exercise its discretion.

*By the Court.*—The order of the circuit court is affirmed.

¶52 REBECCA GRASSL BRADLEY, J. *(concurring in part, dissenting in part).*

> Where once certain words in an Act of Parliament have received a judicial construction in one of the Superior Courts, and the Legislature has repeated them without any alteration in a subsequent statute, I conceive that the Legislature must be taken to have used them according to the meaning which a Court of competent jurisdiction has given to them.

Ex Parte Campbell, (1870) L.R. 5 Ch. App. 703, 706 (Eng.).

¶53 The primary issue in this case turns on the meaning of the phrase "2 or more separate occasions." Under Wis. Stat. § 301.45(5)(b)1. (2019-20)[1] ("the repeat sex offender statute"), a person who has "been convicted" of "a sex offense" on "2 or more separate occasions" must register as a sex offender for life. Corey T. Rector was convicted of five sex offenses, stemming from the same case. The State argues each conviction constitutes a "separate occasion," requiring Rector to register as a sex offender for life. Rector contends convictions entered in close temporal proximity or in the same case are not "separate occasions." The majority erroneously rejects the State's construction in favor of Rector's.

¶54 The prior-construction canon readily resolves this issue. See generally Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 322 (2012). Under this canon, when judicial constructions "have settled the meaning of an existing statutory provision, repetition of the same language

---

[1] Unless otherwise noted, all subsequent references to the Wisconsin Statutes are to the 2019-20 version.

1

in a new statute" addressing similar subject matter presumptively incorporates these constructions. See Bragdon v. Abbott, 524 U.S. 624, 645 (1998) (citing Lorillard v. Pons, 434 U.S. 575, 580-81 (1978)). Shortly before the enactment of the repeat sex offender statute, and in an analogous context, this court held multiple convictions each constitute a "separate occasion," even if the convictions occur in the same case or stem from the same course of conduct. State v. Hopkins, 168 Wis. 2d 802, 805, 484 N.W.2d 549 (1992); see also State v. Wittrock, 119 Wis. 2d 664, 666, 350 N.W.2d 647 (1984). This background informs a reasonable person's understanding of the language in the repeat sex offender statute. See State v. Yakich, 2022 WI 8, ¶35, 400 Wis. 2d 549, 970 N.W.2d 12. Applying the canon, this court should hold Rector was convicted of "a sex offense" on "2 or more separate occasions"; therefore, he is required to register as a sex offender for life. See Wis. Stat. § 301.45(5)(b)1.

¶55 Application of the prior-construction canon is supported by other indicators of meaning. Its application is consistent with a statutorily defined purpose of the sex-offender registry. See Wis. Stat. § 301.001 (explaining one purpose of the registry is to protect the public); see also Scalia & Garner, Reading Law, at 217 ("A . . . purpose clause . . . is a permissible indicator of meaning."). Its application is also consistent with this court's decision in State ex rel. Kaminski v. Schwarz a few years after the enactment of the repeat sex offender statute. See 2001 WI 94,

2

¶33 n.8, 245 Wis. 2d 310, 630 N.W.2d 164. Additionally, extrinsic sources confirm this plain-meaning analysis. <u>See</u> <u>James v. Heinrich</u>, 2021 WI 58, ¶26, 397 Wis. 2d 517, 960 N.W.2d 350 (explaining extrinsic sources are sometimes considered to confirm a plain-meaning analysis (citing <u>State ex</u> <u>rel. Kalal v. Cir. Ct. for Dane Cnty.</u>, 2004 WI 58, ¶51, 271 Wis. 2d 633, 681 N.W.2d 110)).

¶56 The majority commits at least three errors that cause it to incorrectly conclude the prior-construction canon is inapplicable. First, the majority holds, at least implicitly, that prior construction is irrelevant to plain meaning. Second, the majority insinuates the canon's application is inapposite because, in its view, the prior decisions on which the canon's application is predicated were wrongly decided——although the majority does not overrule them. Lastly, the majority suggests the presence of trivial differences between two statutes presents a compelling reason to disregard the canon. The majority is wrong on each count. I respectfully concur in part and dissent in part.[2]

## I. BACKGROUND

¶57 The majority omits from its opinion a thorough description of the facts, dismissing the heinous nature of Rector's crimes as "irrelevant" and scrapping statutory purpose from its purportedly plain meaning analysis. <u>See</u> majority op.,

---

[2] The majority correctly concludes the circuit court did not err in denying Rector's request to participate in the Earned Release Program. Accordingly, I join paragraphs 47 through 50 of the majority opinion.

¶¶42-43 (holding the seriousness of Rector's crimes is "irrelevant"). Contrary to the majority's position, "[i]t is . . . customary for any judicial opinion to relay the facts of the case"——sometimes even when the relevance of particular facts is debatable.[3] Becker v. Dane County, 2022 WI 63, ¶89, 403 Wis. 2d 424, 977 N.W.2d 390 (Rebecca Grassl Bradley, J., dissenting). Rector's crimes illustrate why the State's

_____

[3] Relevancy is often in the eye of the beholder. In Doubek v. Kaul, we considered whether Daniel Doubek's misdemeanor conviction for disorderly conduct constituted a crime of domestic violence, thereby prohibiting him from owning a firearm. 2022 WI 31, 401 Wis. 2d 575, 973 N.W.2d 756. In a unanimous opinion, this court concluded the crime did not, as a matter of law, constitute domestic violence. Id., ¶1. Justice Jill J. Karofsky opened her concurring opinion with the following description of the crime:

> Late in the evening on August 21, 1993, Doubek's estranged wife was in her home alone with their four-year-old daughter. While talking with her sister on the phone, the line suddenly went dead. Minutes later, Doubek broke through the front door, punching a hole in the glass so he could unlock it from the inside. Without his wife's permission, Doubek entered her home armed with a 2x4 slab of lumber. Raising the 2x4 above his head, he told his wife she "was dead." She asked her husband to leave and then went to the door, yelling out to her neighbors for help. Doubek threatened that if she did not move away from the door, he would "let her have it." The two eventually went outside to avoid waking their young daughter. Once outside, Doubek told his wife he did not care what would happen to him if he killed her, even if it meant he lost custody of their daughter. About 30 minutes later, Doubek left.

Id., ¶23 (Karofsky, J., concurring). Notably, Justice Karofsky relayed this detailed description of Doubek's crime despite the impossibility of preserving the victims' anonymity. Doubek's estranged wife and daughter were identified publicly. Justice Karofsky acknowledged the majority opinion was "legally correct," rendering her entire opinion unnecessary. Id., ¶25.

4

proffered interpretation is consistent with the statutory purpose of protecting the public——particularly children. <u>See infra</u> Section III.A.

¶58 In 2018, the National Center for Missing and Exploited Children reported to the Wisconsin Department of Justice that Rector, a middle-aged man, may possess child pornography. Police executed a search warrant at Rector's home, and, as the majority notes, "[t]he State . . . seiz[ed] over 1,000 offending images and videos in Rector's possession."[4] Majority op., ¶2. The State contextualizes Rector's crimes in its opening brief:

> [T]en videos contained graphic and disturbing recordings of child pornography with multiple sexual assaults of children, including: (1) an adult male having anal intercourse with a prepubescent female; (2) an adult male having sexual intercourse with a prepubescent female; (3) an adult male appearing to perform oral sex on a female toddler; (4) an adult male performing oral sex on a prepubescent female's anus and the child performing oral sex on the adult; (5) a bondage recording of a naked prepubescent female performing oral sex on an adult male with the child bound in rope and wearing a leather collar; (6) a prepubescent female performing oral sex on an adult male with the child spitting out ejaculation fluid; (7) a prepubescent female performing oral sex on an adult male with the adult ejaculating onto the child's mouth and chin; (8) a nude prepubescent female rubbing her vagina with a toothbrush before inserting it in her anus; (9) a prepubescent female child masturbating her vaginal and anus area; and (10) a pubescent female exposing her breast, vagina, and anus to the camera.

Rector himself——not his attorney——told the circuit court he "wasn't the one who was violating" the dignity of the children

---

[4] Given its definition of relevancy, it is unclear why the majority notes the State "seiz[ed] over 1,000 offending images and videos." Rector was charged with ten offenses and convicted of five. <u>See</u> majority op., ¶2 & n.2.

5

in these videos because he was not the one performing the sexual assaults.[5]   Rector acknowledged merely that he "possibly . . . re-victimized" them "even though they don't know" that he possessed the videos.

¶59 The State charged Rector with ten counts of possession of child pornography contrary to Wis. Stat. §§ 948.12(1m), (3)(a), and 939.50(3)(d) (2017–18).  As the majority notes, the parties agree that possession of child pornography is a "sex offense" for the purpose of sex-offender registration.  Majority op., ¶11 n.4 (quoting Wis. Stat. § 301.45(1d)(b) (2021–22)).  Pursuant to a plea agreement, Rector pled guilty to five counts, and the other five counts were dismissed.  The State agreed not to issue additional charges related to materials discovered during the same search and to dismiss a separate, unrelated matter.  During the plea colloquy, Rector was asked for his plea to each count individually.  After Rector said "guilty" for the fifth time, the circuit court accepted his pleas, found Rector "guilty . . . in Counts 1 through 5," and entered the judgment of conviction.

¶60 At the sentencing hearing, the circuit court asked whether sex-offender registration was required.  The prosecutor was unsure, so the court relied on a pre-sentence investigation report, which recommended registration for 15 years.  The court accepted this recommendation.  The court also sentenced Rector

---

[5] The Honorable Jason A. Rossell, Kenosha County Circuit Court, presided.

to eight years of initial confinement and ten years of extended supervision on each count to be served concurrently.

¶61 The Department of Corrections (DOC) later moved the circuit court to amend the judgment of conviction to require Rector to register as a sex offender for life. The DOC explained lifetime registration was required under the repeat sex offender statute because Rector was convicted of multiple sex offenses and each conviction constituted a separate occasion. The DOC referenced a 2017 Attorney General opinion, in which the Attorney General construed the phrase "on 2 or more separate occasions" in Wis. Stat. § 301.46(2m)(am) (2017–18), a closely related statute enacted at the same time as the repeat sex offender statute. See Opinion of Wis. Att'y Gen. to Jon E. Litscher, Sec'y of the Wis. DOC, OAG-02-17 (Sept. 1, 2017). Section 301.46(2m)(am) addresses circumstances under which a government agency is required to notify local law enforcement upon the release of a sex offender into the community. The Attorney General concluded the number of "separate occasions" is "the number of convictions, including multiple convictions imposed at the same time and based on the same complaint." Id., ¶2.

¶62 Rector objected, and the circuit court denied DOC's motion, reasoning Rector's sex offense convictions did not occur on different occasions. The court concluded the phrase "separate occasions" in the repeat sex offender statute is ambiguous. It then performed a "fresh analysis" to resolve the

7

ambiguity, rather than examining how this court has construed that phrase in an analogous statute.

¶63 Rector appealed the circuit court's decision denying him eligibility for an Earned Release Program, and the State cross-appealed on the sex-offender registration issue. The court of appeals certified the appeals to this court. The court of appeals noted this court held, in a similar context, "the phrase 'separate occasions' . . . meant each separate conviction even when multiple convictions occurred in the same proceeding, at the same time[.]" State v. Rector, No. 2020AP1213-CR, unpublished certification, at 2 (Wis. Ct. App. Nov. 24, 2021). It emphasized that if this court were to deny certification, the court of appeals would be "tasked with defining the same phrase" that this court "already defined" in two of its decisions. Id. This court accepted certification.

## II. STANDARD OF REVIEW

¶64 The State's cross-appeal requires this court to construe the repeat sex offender statute. Statutory construction is a question of law subject to this court's independent review. See State v. McKellips, 2016 WI 51, ¶29, 369 Wis. 2d 437, 881 N.W.2d 258 (citing Shannon E. T. v. Alicia M. V.M., 2007 WI 29, ¶31, 299 Wis. 2d 601, 728 N.W.2d 636).

## III. ANALYSIS

### A. Application of the Prior-Construction Canon Requires Rector to Register as a Sex Offender for Life.

¶65 The repeat sex offender statute provides:

(b) A person who is covered under sub. (1g) (a), (b), (bm), (c), (d), (dd), (dp) or (e) shall continue to

8

comply with the requirements of this section until his or her death if any of the following applies:

1. The person has, on <u>2 or more separate occasions</u>, been convicted or found not guilty or not responsible by reason of mental disease or defect for a sex offense, or for a violation, or the solicitation, conspiracy or attempt to commit a violation, of a federal law, a military law, a tribal law or a law of any state that is comparable to a sex offense. A conviction or finding of not guilty or not responsible by reason of mental disease or defect that has been reversed, set aside or vacated is not a conviction or finding for purposes of determining under this subdivision whether a person has been convicted on 2 or more separate occasions.

Wis. Stat. § 301.45(5)(b)1. (emphasis added).

¶66 The State's argument is grounded in the prior-construction canon, which holds that "[i]f a . . . phrase has been authoritatively interpreted by the highest court in a jurisdiction, . . . a later version of that act perpetuating the wording is presumed to carry forward that interpretation." Scalia & Garner, <u>Reading Law</u>, at 322. Even more broadly, "the canon . . . applies (though with less force) to interpretations of the same wording in related statutes." <u>Id.</u>; <u>see also</u> Shambie Singer, 3A <u>Sutherland Statutes & Statutory Construction</u> § 67:3 n.52 (8th ed. last updated Nov. 2022) ("The prior construction canon of statutory interpretation teaches that if courts have settled the meaning of an existing provision, the enactment of a new provision that mirrors the existing statutory text indicates, as a general matter, the new provision has that same meaning." (citing <u>Lightfoot v. Cendant Mortg. Corp.</u>, 137 S. Ct. 553 (2017))); Bryan A. Garner et al., <u>The Law of Judicial</u>

9

Precedent 346 (2016) (explaining "when a legislature incorporates provisions of an older law into a new law" after the older law has been construed, the new law presumptively receives the same construction). As the United State Supreme Court stated: "In adopting the language used in the earlier act, Congress 'must be considered to have adopted also the construction given by this Court to such language, and made it a part of the enactment.'" Shapiro v. United States, 335 U.S. 1, 16 (1948) (quoting Hecht v. Malley, 265 U.S. 144, 153 (1924)).

¶67 The prior-construction canon stems from the precedential nature of common law jurisprudence: once a phrase has been authoritatively construed in a particular context, it acquires a particular meaning in a "technical legal sense"——even if the phrase has a different meaning in common parlance. Scalia & Garner, Reading Law, at 324. For example, the word "person" in common parlance means a "human being," but in a legal document, it likely also "denotes a corporation" or "other entity[.]" Id. at 73. Contrary to the majority's view, a phrase does not have to be a "legal term of art" prior to its initial construction——it becomes one through its construction. See, e.g., majority op., ¶25 (citing Kalal, 271 Wis. 2d 633, ¶¶45-46); see also id., ¶31. "The bar is unquestionably justified in relying on a decision (even a single decision) of the jurisdiction's highest court regarding the meaning of a certain word or phrase that is repeated in a later statute." Scalia & Garner, Reading Law, at 325. Unfortunately, "[c]ourts as well as advocates have been known to overlook technical

10

senses of ordinary words——senses that might bear directly on their decisions." Id. at 74. The majority opinion presents a prime example.

¶68 The State discusses a different basis for the prior-construction canon: reasonable people "presume that the legislature acts with full knowledge of existing statutes and how the courts have interpreted them." Mallow v. Angove, 148 Wis. 2d 324, 330, 434 N.W.2d 839 (Ct. App. 1988) (citing C.L. v. Edson, 140 Wis. 2d 168, 181, 409 N.W.2d 417 (Ct. App. 1987)). Although this "fanciful presumption of legislative knowledge,"[6] is not the soundest basis for the canon, this court has long invoked it:

> All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it, . . . they are therefore to be construed in connection with and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, that is, they are to be construed with a reference to the whole system of law of which they form a part.

Wis. Carry, Inc. v. City of Madison, 2017 WI 19, ¶62 n.44, 373 Wis. 2d 543, 892 N.W.2d 233 (quoting Town of Madison v. City of Madison, 269 Wis. 609, 614, 70 N.W.2d 249 (1955)) (ellipsis in the original).

¶69 The practical implications of the prior-construction canon are the same, at least in this case, regardless of the rationale for the canon: "the meaning and effect of statutes are to be determined in connection, not only with the common

---

[6] Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 324 (2012).

11

law, . . . and the constitution, but also with reference to other statutes . . . and the decisions of the courts." Town of Madison, 269 Wis. at 614 (quoting 82 C.J.S. Statutes § 362) (ellipses in the original).

¶70 The State notes the phrase at issue, "2 or more separate occasions," is materially identical to a phrase appearing in another statute, Wis. Stat. § 939.62 (1991-92) ("the repeat offender statute"). That statute enhanced the penalty for "repeaters." In relevant part, it defined a repeater as a person "convicted of a misdemeanor on 3 separate occasions" during the 5-year period immediately preceding the commission of the crime for which the person was presently being sentenced. § 939.62(2) (1991-92) (emphasis added).

¶71 In 1984 and again in 1992, this court construed the phrase "3 separate occasions" in the repeat offender statute. In State v. Wittrock, the defendant was convicted of disorderly conduct in 1977. 119 Wis. 2d at 666. In 1980, he was convicted of two counts of disorderly conduct in one case, stemming from separate events. Id. In 1981, he was charged with various crimes. Id. at 665. The issue was whether the two disorderly conduct convictions from the 1980 case constituted separate occasions, even though the convictions arose from one case. Id. at 666-67.

¶72 The arguments in Wittrock mirrored the arguments advanced in this case. The State argued each conviction constituted a separate occasion. Id. at 667. In contrast, the

12

defendant argued "3 separate occasions" meant three separate court appearances. Id.

¶73 This court deemed "separate occasions" ambiguous, consulted legislative history, and considered public policy implications. Id. at 671-75. The majority in this case does not reconcile its holding that the phrase "separate occasions" is plain with this court's previous holding in Wittrock that the phrase is ambiguous. At a minimum, the phrase is also ambiguous in the repeat sex offender statute.

¶74 After declaring "separate occasions" ambiguous, this court held each disorderly conduct conviction constituted a separate occasion. Id. at 674. It explained the statute focuses on the "quantity of crimes," not the "time of conviction." Id. Accordingly, the disorderly conduct convictions were separate occasions even though they were adjudicated in the same case.[7] Notably, this court held open

---

[7] The majority suggests this court's consideration of "legislative intent" in Wittrock is indicative of the "accepted approach to statutory interpretation at the time." Majority op., ¶22. It cites no authority for this proposition, but it does state in a footnote, "[w]e have since clarified that, '[j]udicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute.'" Id., ¶22 n.6 (quoting State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110) (second modification in the original).

Reality is more nuanced. At the time Wittrock was decided, "ascertainment of legislative intent" was "the frequently-stated goal of statutory interpretation," but "our cases generally adhere[d] to a methodology that relie[d] primarily on intrinsic sources of statutory meaning and confine[d] resort to extrinsic sources of legislative intent to cases in which the statutory language [wa]s ambiguous." Kalal, 271 Wis. 2d 633, ¶43

13

whether convictions for crimes constituting a single course of conduct qualify as separate occasions. Id. at 668.

¶75 In State v. Hopkins, the defendant argued he was not a repeater because the conduct underlying two of his three prior convictions stemmed from events occurring on the same day. 168 Wis. 2d at 807. Specifically, the defendant was arrested for possession of cocaine and then gave officers a false name. Id. He was convicted of both possession of cocaine and obstructing an officer. Id. Following reasoning similar to Wittrock's, this court held the defendant was a repeater because "[t]he 'occasion' referred to in the statute is the occasion of conviction for each of the three crimes. Thus, all that is required by the statute is that a defendant be convicted of three misdemeanors within the five-year period." Id. at 805.

---

(citations omitted). Additionally, the test for ambiguity employed in Wittrock is effectively the same test this court currently employs. Compare id., ¶47 ("The test for ambiguity generally keeps the focus on the statutory language: a statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." (citations omitted)), with State v. Wittrock, 119 Wis. 2d 664, 669-70, 350 N.W.2d 647 (1984) ("This court has often stated that the threshold question to be addressed by this court when construing a statute is whether the statutory term is ambiguous. A statutory term is deemed ambiguous if reasonable persons could disagree as to its meaning. However, whenever a case such as this reaches the court, it naturally follows that the parties will obviously disagree as to the term's meaning. The court, then, will look to the language of the statute itself to determine whether well-informed persons should become confused as to a term's meaning. Primary recourse is to statutory language itself. When this court looks at the language utilized in . . . [the repeat offender statute] the statute must be interpreted on the basis of the plain meaning of its terms." (citations omitted)).

Accordingly, "each conviction for a misdemeanor constitutes a separate occasion[.]" Id. This court emphasized that "it is the number of convictions that is important rather than when the crimes were committed."[8] Id.

¶76 The State argues Wittrock and Hopkins construed "separate occasions" to have a particular meaning, and reasonable people understand the repetition of that phrase in related and subsequently enacted statutes to bear the same

---

[8] In Hopkins, this court rejected a surplusage argument nearly identical to the surplusage rationale the majority adopts. See majority op., ¶¶11, 19. As this court explained:

> [The defendant] next contends that this court is bound by his interpretation of the statute by [the rule that] . . . [s]tatutes should be construed so that effect is given to each word . . . . [The defendant's] argument . . . is that a finding that a person can be a repeater based on two or more misdemeanors arising out of a single course of conduct renders surplusage the phrase "on 3 separate occasions." [The defendant] . . . maintains that if the legislature had intended that the number of prior convictions would define a repeater, its use of the phrase "on 3 separate occasions" was unnecessary. The legislature could have merely said "convicted of 3 misdemeanors."
>
> . . . .
>
> [W]e disagree that our interpretation fails to give effect to every word in the statute. In this opinion, we have concluded that each entry of conviction against a defendant constitutes a separate occasion for purposes of the repeat offender statute. Thus, contrary to . . . [the defendant's] assertions, our interpretation of the statute gives meaning to the phrase "on 3 separate occasions."

State v. Hopkins, 168 Wis. 2d 802, 813-14, 484 N.W.2d 549 (1992). The majority does not reconcile its surplusage rationale with Hopkins.

meaning. Wittrock and Hopkins therefore collectively inform how a reasonable person interprets the repeat sex offender statute, considering these cases were decided shortly before the enactment of that statute. Specifically, Wittrock was decided in 1984 and Hopkins in 1992. In 1995, the court of appeals applied the rule articulated in these cases. See State v. Koeppen, 195 Wis. 2d 117, 126 n.4, 536 N.W.2d 386 (Ct. App. 1995) ("A conviction of a misdemeanor on three separate occasions only requires convictions of three prior misdemeanors, not three separate court appearances." (citing Wittrock, 119 Wis. 2d at 674)). In mid-1996, the repeat sex offender statute and its companion, Wis. Stat. § 301.46(2m)(am), were created by the same act, and both statutes use the phrase "separate occasions." 1995 Wis. Act 440, §§ 72, 75. Given this timing, the State emphasizes "[u]nder . . . [the prior-construction] canon[,] . . . 'separate occasions' receives its accepted legal meaning under the Wittrock-Hopkins interpretation." A discussion of this series of events is conspicuously absent from the majority opinion, which treats the repeat sex offender statute as if it were enacted before Wittrock and Hopkins.

¶77 In contrast, Rector rejects the prior-construction canon. Rector seems to take issue with the very idea that prior construction is relevant to plain meaning. He also seems to argue Wittrock and Hopkins were wrongly decided, theorizing this court over-relied on legislative history. Additionally, he argues the canon is inapplicable because the cases construed, in his view, a materially different statute.

16

¶78 Instead of applying the prior-construction canon, Rector primarily argues that multiple convictions occur on the same occasion unless they are separated by a temporal lapse. He quotes an abrogated Seventh Circuit decision: "the term 'occasion' incorporates a temporal distinction, i.e., one occasion cannot be simultaneous with another." United States v. Hudspeth, 42 F.3d 1015, 1023 n.16 (7th Cir. 1994) (en banc), abrogated on other grounds by Shepard v. United States, 544 U.S. 13 (2005). At points, Rector suggests the issue is not so much timing as whether the convictions result from the same underlying case.

¶79 The prior-construction canon resolves this case. In Wittrock and Hopkins, this court authoritatively construed the phrase "separate occasions." In Wittrock, this court held that two convictions adjudicated in the same case constitute separate occasions. 119 Wis. 2d at 666. Similarly, in Hopkins, this court held convictions for two crimes committed in close temporal proximity constitute separate occasions: "The 'occasion' referred to in the statute is the occasion of conviction for each of the three crimes. Thus, all that is required by the statute is that a defendant be convicted of three misdemeanors within the five-year period." 168 Wis. 2d at 805. Shortly after Hopkins, the legislature used the phrase "separate occasions" in another statute governing repeat offenders: the repeat sex offender statute. Applying the prior-construction canon, each of Rector's five sex offense

17

convictions constitutes a separate occasion, even though Rector's pleas were accepted during the same court proceeding.

¶80 Contrary to Rector's argument, the prior-construction canon is relevant to plain meaning but the majority degrades its utility. See Majority op., ¶20 (declaring "the meaning of the statute is clear from its text" and only after that declaration considering the State's prior-construction argument); see also id., ¶9 ("[W]e first discern . . . [the repeat sex offender statute's] plain meaning based on the language and context of the statute. We next address this court's prior decisions . . . and explain why those decisions do not dictate our interpretation . . . in this case.").

¶81 Although the majority admits "[p]rior interpretation by this court may be helpful in a plain meaning analysis," its analysis eschews the canon altogether. See id., ¶25 (citing Kalal, 271 Wis. 2d 633, ¶¶45-46). For example, it holds Wittrock is "irrelevant" because, in the majority's view, the repeat sex offender statute is "unambiguous[]," but that reasoning incorrectly presumes the prior-construction canon applies only to resolve an ambiguity. Id., ¶26. The majority says the canon is at odds with "our oft-quoted principle that 'statutory language is given its common, ordinary, and accepted meaning[.]'" Id., ¶40 (quoting Kalal, 271 Wis. 2d 633, ¶45). By truncating the principle espoused in Kalal, the majority misrepresents that case, which actually reads: "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are

18

given their technical or special definitional meaning." Kalal, 271 Wis. 2d 633, ¶45 (citations omitted).

¶82 In other cases, some members of the majority have demeaned the canons of construction as mere tools in a "toolbox"——"extrinsic source[s]," the utility of which is limited to "clearing up confusing or ambiguous text." James, 397 Wis. 2d 517, ¶23 n.12 (quoting the dissent). Previously, this court unequivocally rejected this view. Id. (noting some justices' disparagement of the canons exposes a "[f]undemental[] . . . misunderstand[ing of] how to interpret legal texts"). The denigration of traditional canons for interpreting legal texts infects the majority opinion.

¶83 Like many other canons, prior construction is a source of plain meaning, having been applied by "the best legal thinkers . . . for centuries." Scalia & Garner, Reading Law, at xxix. Common law jurisdictions throughout the world have applied the prior-construction canon for a long time. See, e.g., Campbell, 5 Ch. App. at 706. Its conventional application, over a long period, makes it an intrinsic source. "Neither written words nor the sounds that the written words represent have any inherent meaning. Nothing but convention and contexts cause a symbol or sound to convey a particular idea." Scalia & Garner, Reading Law, at xxvii. The prior-construction canon is part of "a generally agreed-on approach to the interpretation of legal texts." Id. It and other canons are "helpful, neutral guides," "grounded in experience developed by reason and tend to a better administration of justice than

19

leaving interpretation in each case to feelings of policy on the part of the tribunal[.]" Id. at 61 (quoting 3 Roscoe Pound, Jurisprudence 506 (1959)). The majority's "marginalization" of this well-established canon "flies in the face of centuries of jurisprudence" and is "far outside of the judicial mainstream." See James, 397 Wis. 2d 517, ¶23 n.12.

¶84 The majority also demonstrates a misunderstanding of the prior-construction canon by adopting Rector's attack on the reasoning of Wittrock and Hopkins. See, e.g., majority op., ¶22 ("[W]ith little analysis of the surrounding words of the statute, the court held that the term is ambiguous[.]"); id., ¶25 n.7 (explaining the majority intends to "point[] out inconsistencies in the Wittrock and Hopkins decisions"). Even assuming the cases were wrongly decided, they changed the background against which the repeat sex offender statute was enacted. The legislature presumptively relied on these cases, a point reasonable people expect to inform legal meaning. The legislature is not required to predict which of this court's cases may someday be overturned.

¶85 The majority stops short of overturning Wittrock and Hopkins despite insinuating they were wrongly decided, creating inconsistency in the law——a prime reason to discard a decision. See State v. Roberson, 2019 WI 102, ¶50, 389 Wis. 2d 190, 935 N.W.2d 813 (explaining this court can overturn precedent if "there is a showing that the precedent has become detrimental to coherence and consistency in the law" (quoting Bartholomew v. Wis. Patients Comp. Fund & Compcare Health Servs. Ins., 2006 WI

20

91, ¶33, 293 Wis. 2d 38, 717 N.W.2d 216)). The majority offers no principled reason——none——to justify why the number of occasions is calculated differently in two statutes using the same phrase in analogous contexts. The majority claims the repeat offender statute is "unique," but the majority's mere declaration does not make it so. See Majority op., ¶25. Limiting cases to their facts without justification is not legal reasoning.

¶86 The majority claims "any inconsistency or confusion" stemming from its holding "is outweighed by the clear and plain meaning" of the repeat sex offender statute. Id., ¶39; see also id., ¶30 ("In summary, the portions of Wittrock——and by extension, Hopkins——that are inconsistent with our analysis are all based on considerations that are irrelevant or inapplicable in the current context."). This reasoning erroneously presupposes that prior construction is irrelevant to plain meaning. Applying the canon would preserve plain meaning and prevent a wholly unnecessary inconsistency. See Scalia & Garner, Reading Law, at 324. The canon recognizes that a precedential construction imbues a phrase with meaning it might otherwise not have. By disregarding the canon, the majority fosters incoherence and complexity while spawning confusion. See Barrass v. Aberdeen Steam Trawling & Fishing Co., [1933] A.C. 402, 412 (Eng.) (explaining the prior-construction canon is "a salutary rule and one necessary to confer upon Acts of Parliament that certainty which, though it is often lacking, is always to be desired").

21

¶87 Notwithstanding the conflict created by its decision in this case, the majority declines to overturn Wittrock and Hopkins because the meaning of the phrase "separate occasions" in the repeat offender statute "appears to be settled[.]" Majority op., ¶25. The majority presumes the legislature has "possibl[y]" "acquiesce[d]" to the Wittrock-Hopkins construction because the legislature has made changes to the repeat offender statute since those cases were decided "and did not make any changes to the 'separate occasions' language[.]" Id., ¶25 n.7 (citing Estate of Miller v. Storey, 2017 WI 99, ¶51, 378 Wis. 2d 358, 903 N.W.2d 759). The majority then holds that just because the meaning "appears to be settled [in the repeat offender statute], it does not follow that such operation is necessarily transposed onto the . . . [repeat sex offender] statute." Id., ¶25. Whatever illegitimate theory the majority invokes to support its creation of legal inconsistency cannot justify its decision to mutate fixed meaning in a closely related statute.

¶88 The irony of upholding Wittrock and Hopkins based on legislative acquiescence is totally lost on the majority. According to the majority, the fixed meaning of a statute can change if this court misconstrues the statute and the legislature, over some undefined period, does not amend the text to correct the error. Although the conventional application of the misguided doctrine would conclude legislative acquiescence confirms the holdings of Wittrock and Hopkins, the majority disagrees with the analysis in each case. The majority does not

22

explain how the fixed meaning of a statute can change based on its text remaining unchanged. See Estate of Miller, 378 Wis. 2d 358, ¶99 (Kelly, J., concurring/dissenting). The Wisconsin Constitution sets forth procedures for changing the law. Absent from them is any manner by which a law can be, in effect, amended through legislative inaction. Unlike legislative acquiescence, prior construction is premised on an event prior to a law's enactment imbuing a phrase used in the law with meaning. Legislative acquiescence is premised on a non-event——the mere passage of time——changing a law's fixed meaning.

¶89 The majority professes inaction can imbue a misconstrued statute with a new meaning. If the majority is correct, surely this court's construction of a phrase could also imbue meaning into that phrase when it is later used in a new statute. In fact, to conclude that when the legislature does not act, it is making a reasoned decision to endorse a particular construction is much more suspect than to suppose the legislature considers the definitive construction of a phrase by the state's highest court when it uses that phrase in a new statute. See id., ¶97 ("[A]ttributing significance to legislative inaction depends on an overweening, court-centric view of our relationship to the other branches of government. If this interpretive device is to function, it requires a belief that the legislature carefully attends to everything we say, rigorously compares our pronouncements to its own understanding of the statutory corpus, compiles a list of disagreements, and

23

privileges corrective measures over everything else on its crowded legislative calendar."). A legislative drafter is obviously interested in the legislation being construed in accordance with the drafter's expectations, and for that reason, drafters often consider how phrases have been construed by courts. See Wisconsin Bill Drafting Manual § 2.03(2)(a) (2023–24) (advising drafters at the Legislative Reference Bureau to consider whether a word or phrase is defined "in case law").

¶90 Rector's argument that the statutes are materially different, which the majority adopts, is patently wrong. As the majority notes, both the repeat sex offender statute and the repeat offender statute "may be relied upon during the sentencing of a criminal defendant"——and specifically, a repeat offender. See Majority op., ¶39. Contradicting itself, the majority declares the only similarity between the statutes lies in their use of the same language. Id., ¶36 ("[T]he legislature's limited use of general terms is hardly enough on its own to make the statutes closely related."). While the majority insists these statutes are sufficiently dissimilar to reject the prior-construction canon, its description of these alleged differences is particularly opaque.

¶91 "[W]hen a statute uses the very same terminology as an earlier statute——especially in the very same field, such as securities law or civil–rights law——it is reasonable to believe that the terminology bears a consistent meaning." Scalia & Garner, Reading Law, at 323. "One might even say that the body of law of which a statute forms a part——especially if that body

24

has been codified——is part of the statute's context." Id.; see also Strenke v. Hogner, 2005 WI 25, ¶28, 279 Wis. 2d 52, 694 N.W.2d 296 ("A statute must be interpreted in light of the common law and the scheme of jurisprudence existing at the time of its enactment." (citing State v. Hansen, 2001 WI 53, ¶19, 243 Wis. 2d 328, 627 N.W.2d 195)). Notably, the United States Supreme Court rejected the trivial-differences approach the majority employs. See United States v. Davis, 588 U.S. __, 139 S. Ct. 2319, 2329 (2019) (citing Sullivan v. Stroop, 496 U.S. 478, 484 (1990)).

¶92 The repeat sex offender statute uses the "very same terminology"——"separate occasions"——as the repeat offender statute and both statutes deal with similar subject matter. Scalia & Garner, Reading Law, at 323. That one states "2 or more separate occasions" and the other "3 separate occasions" is irrelevant. See State v. Anderson, 2014 WI 93, ¶41, 375 Wis. 2d 337, 851 N.W.2d 760 (Abrahamson, C.J., dissenting) ("I start with the statutes, the one governing . . . [not guilty by reason of insanity] and the other governing involuntary intoxication. The two are closely related. They have distinctive features but also share certain legal similarities; violation of each might be proven by similar facts."). In one treatise on statutory construction, examples of similar subject matters are discussed at a high level of generality: "securities law or civil—rights law[.]" Scalia & Garner, Reading Law, at 323. The two statutes in this case are part of the same body of law. The purpose of both is self-evidently to

25

protect the public from repeat offenders and both impact sentencing.

¶93 The majority contradicts its own reasoning that the statutes are different by holding the similarity in language between the statutes is immaterial because "separate occasions" was not a legal term of art at the time it was construed in Wittrock. See Majority op., ¶31. The question, though, is not whether "separate occasions" had or has an accepted meaning in common parlance but whether this court's precedent changes that otherwise accepted meaning in a particular context. It obviously does.

¶94 The phrase "separate occasions" is not especially common in the Wisconsin statutes. Statutes can be closely related based on "similar" phraseology and subject matter, and the justification for applying the canon seems particularly strong when the phrase at issue seldom appears in the Wisconsin statutes. Compare State v. Reyes Fuerte, 2017 WI 104, ¶27, 378 Wis. 2d 504, 904 N.W.2d 773 ("Statutes are closely related when they are in the same chapter, reference one another, or use similar terms. Being within the same statutory scheme may also make two statutes closely related." (citation omitted)), with majority op., ¶35 ("It is undeniable that the two statutes reside in different chapters governing different subject matter. There are no cross references between . . . [the two statutes], and the statutes do not rely on each other or otherwise interact.").

26

¶95 Aside from the repeat sex offender statute, its companion, Wis. Stat. § 301.46(2m)(am), and the repeat offender statute, the phrase appears in only three other statutes, one of which imposes a penalty enhancer for certain repeat domestic abusers. See Wis. Stat. § 939.621(1)(b) (defining as a "domestic abuse repeater" any "person who, during the 10-year period immediately prior to the commission of the crime for which the person is presently being sentenced if the convictions remain of record and unreversed, was convicted on 2 or more separate occasions of a felony or a misdemeanor for which a court imposed a domestic abuse surcharge under s. 973.055 (1), a felony or a misdemeanor for which a court waived a domestic abuse surcharge pursuant to s. 973.055 (4), or a felony or a misdemeanor that was committed in another state but that, had it been committed in this state, would have subjected the person to a domestic abuse surcharge under s. 973.055 (1) or that is a crime of domestic abuse under the laws of that state" (emphasis added)); Wis. Stat. § 939.22(21) (defining a "[p]attern of criminal gang activity" in the Wisconsin Criminal Code); Wis. Stat. § 174.02(3)(a)1. (defining the circumstances under which a court may order a dog killed). In the six statutes in which the phrase "separate occasions" appears, four protect the public from repeat offenders. The majority, therefore, is wrong to suggest "separate occasions" is a "general term[.]" See Majority op., ¶36 ("[T]he legislature's limited use of general terms is hardly enough on its own to make the statutes closely related.").

27

¶96 Application of the prior-construction canon is also consistent with a textually-expressed purpose of the sex-offender registry, which the majority disregards: Protecting the public, and particularly children. See Wis. Stat. § 301.001 ("The purposes of this chapter and chs. 302 to 304 are to prevent delinquency and crime by an attack on their causes; to provide a just, humane and efficient program of rehabilitation of offenders; and to coordinate and integrate corrections programs with other social services. In creating the department of corrections, chs. 301 to 304, the legislature intends that the state continue to avoid sole reliance on incarceration of offenders and continue to develop, support and maintain professional community programs and placements."). Textually-expressed purpose is a legitimate indication of plain meaning. See Scalia & Garner, Reading Law, at 217.

¶97 The 2017 Attorney General opinion examined the purpose of the sex-offender registry, and specifically, of Wis. Stat. § 301.46. The Attorney General noted § 301.46 "reflects the Legislature's concern with offenders' potential danger to the public. The number of convictions, not court proceedings, best measures that risk." OAG-02-17, ¶14; see also Kaminski, 245 Wis. 2d 310, ¶41 (explaining the purpose of the act creating the repeat sex offender statute was "to protect the public and assist law enforcement" and "related to community protection" (quoting State v. Bollig, 2000 WI 6, ¶¶21-22, 232 Wis. 2d 561, 605 N.W.2d 199)). A person convicted of multiple sex offenses is no less dangerous than he would otherwise be solely because

28

the convictions occurred in the same case. See OAG-02-17, ¶15. Perhaps a person who is convicted of a sex offense and later commits a second sex offense is more dangerous than someone convicted of two sex offenses in one case because the person clearly did not use the first conviction as an opportunity for rehabilitation. The majority does not, however, require the commission of an offense to take place after the first conviction. The majority does not hold that a person who commits crimes after already having been convicted is a repeater. Instead, the majority holds that a person convicted at two different times and in two different proceedings is a repeater, while a person convicted of multiple offenses close in time during one proceeding is not. That holding is not required by the text of the statute and is divorced from the statutory purpose.

¶98 The majority does not reconcile its dangerous holding with the dangerous problem the legislature addressed in the repeat sex offender statute. As the State notes:

> [S]uppose . . . [a person other than Rector] downloaded child pornography to his home computer in County X and later that same day to his cellphone while in County Y. Under this scenario, the State may charge this other person in two counties that may result in convictions in different courts on different days.

According to the State, "[i]t is absurd that the two defendants face such differing periods of sex offender registration and reporting." Although the State misunderstands the extraordinary

29

facts necessary to deem a result legally absurd,[9] the logical implications of Rector's interpretation should give the majority pause in light of the sex-offender registry's purpose. Rector is no less dangerous than the hypothetical sex offender in the State's scenario, yet the majority's holding places him on the registry for a much shorter period. The majority's holding invites strategic pleading by the State; the majority would have required Rector to register as a sex offender for life had the prosecutor simply brought one count in one case and the remaining counts in another, with the cases being adjudicated on different days. The majority's holding creates peculiar distinctions between similarly situated defendants.

¶99 Rector possessed vile, evil imagery of children being sexually abused; having his crimes adjudicated in a single case does not mitigate the danger he poses. Even assuming Rector and others like him have a "low" risk of reoffending——a point emphasized in an amicus brief by the State Public Defender—— three justices of this court have previously explained: "[P]arents of young children should ask themselves whether they should worry that there are people in their community who have 'only' a 16 percent or an 8 percent probability of molesting young children——bearing in mind the lifelong psychological scars that such molestation frequently inflicts."[10] State v. C.G.,

---

[9] See generally Secura Supreme Ins. v. Estate of Huck, 2023 WI 21, 406 Wis. 2d 297, 986 N.W.2d 810 (Rebecca Grassl Bradley, J., dissenting) (discussing the legal principle of absurdity).

[10] The study cited in the amicus brief found six percent of sex offenders reoffended by committing another sex offense over a 15-year period. Joseph R. Tatar II & Anthony Streveler, Sex

2022 WI 60, ¶42, 403 Wis. 2d 229, 976 N.W.2d 318 (lead op.) (quoting Belleau v. Wall, 811 F.3d 929, 933-34 (7th Cir. 2016)). The majority impermissibly erases the statutory purpose of the sex-offender registry by constructing a rule removing Rector from the registry earlier than the law requires, apparently because the prosecutor used an efficient method to prosecute the multiple crimes Rector committed. The majority's decision thereby endangers some of the most vulnerable members of the public.

¶100 In contrast, application of the prior-construction canon would give effect to the statutory purpose of the sex-offender registry while remaining consistent with this court's post-enactment precedent. In 2001, this court unanimously cited Wis. Stat. § 301.46(2m) as requiring "DOC . . . to provide the police chief or sheriff with bulletins regarding any registrant who is about to be released from confinement if the registrant has been convicted of two or more sex offenses, or has been committed under Wis. Stat. Ch. 980." Kaminski, 245 Wis. 2d 310, ¶33 n.8. This court equated convictions on "2 or more separate

_____

Offender Recidivism After Release from Prison 5 (2015), https://doc.wi.gov/DataResearch/RecidivismReincarceration/Sexual OffenderRecidivismReport.pdf. The study utilized DOC's rather narrow definition of "sexual recidivism": "Following an episode of incarceration with the WI DOC, to commit a sex offense that results in a new conviction and sentence to WI DOC custody or supervision." Id. at 4. This definition is problematic because many sex offenses do not result in a conviction. See State v. Johnson, 2023 WI 39, ¶79, __ Wis. 2d __, __ N.W.2d __ (Karofsky, J., concurring) ("[A]ccording to data from the U.S. Department of Justice, as much as 86 percent of child sexual abuse may go unreported altogether." (citing Dean G. Kilpatrick et al., Youth Victimization: Prevalence and Implications 6 (2003))).

occasions" with convictions for "two or more sex offenses[.]" Id. The majority silently withdraws this language from Kaminski, destabilizing yet another precedent. See Friends of Frame Park, U.A. v. City of Waukesha, 2022 WI 57, ¶68, 403 Wis. 2d 1, 976 N.W.2d 263 (Rebecca Grassl Bradley, J., concurring) ("After the plain text of a statute, precedent is the most significant, the most ubiquitous, and the most powerful of the traditional tools of statutory construction." (quoting Michael Sinclair, Traditional Tools of Statutory Interpretation 13 (1942))). The majority's holding cannot be reconciled with Kaminski.

¶101 Extrinsic sources, referenced by the State, confirm the propriety of applying the prior-construction canon.[11] The majority degrades them, even though it rationalizes its rejection of the canon because the repeat sex offender statute ostensibly carries an "entirely different . . . legislative history[.]" Majority op., ¶27. In a literal sense, all statutes have a different history, but the reasonable inferences that can be drawn from the legislative history of the repeat sex offender statute are analogous to those drawn by this court in Wittrock and Hopkins with regard to the repeat offender statute's history.

---

[11] The majority insinuates this opinion elevates extrinsic sources above the letter of the law, but extrinsic sources simply confirm the plain-meaning analysis and their use for this purpose is well established in our jurisprudence. Contra majority op., ¶27 n.9.

¶102 Three sources of legislative history are relevant. A DOC report in the drafting file for the repeat sex offender statute recommended "lifetime registration requirements for any person convicted, or found not guilty [by reason] of mental disease or defect, of two (2) or more sexual offenses——repeat sex offenders."[12] DOC, Sex Offender Community Notification: Proposed Program Components 6 (1994); see also id. at ii (recommending extending "registration requirements for repeat sex offenders (2 or more separate convictions) for life"). Notably, the report uses the phrase "repeat sex offenders," while the word "repeater" is used throughout the repeat offender statute. E.g., Wis. Stat. § 939.62(1) ("If the actor is a repeater . . . ."). The report, which was created before the

---

[12] The majority declares this report "is not a reliable indicator of legislative intent. Legislators are not bound to follow, or even consider, a DOC report when drafting or enacting a statute." Id., ¶28. We do not attempt to discern the mythical legislative "intent" underlying a statute but instead declare its meaning, which legislative history may be used to confirm. The majority deems the law review article discussed in Wittrock a reliable historical source but it was published after the enactment of the relevant language in the repeat offender statute. Obviously, it was not read by any legislators who voted on the matter. See id., ¶27 (proclaiming this law review article a better source of legislative history).

The majority displays a lack of familiarity with this court's binding precedent referencing this DOC report. E.g., State ex rel. Kaminski v. Schwarz, 2001 WI 94, ¶¶53–55, 245 Wis. 2d 310, 630 N.W.2d 164 (citing and quoting DOC, Sex Offender Community Notification: Proposed Program Components (1994)); State v. C.G., 2022 WI 60, ¶29, 403 Wis. 2d 229, 976 N.W.2d 318 (quoting State v. Bollig, 2000 WI 6, ¶¶22, 25, 232 Wis. 2d 561, 605 N.W.2d 199 (citing DOC, Sex Offender Community Notification, i, 1-2)). The majority creates yet another inconsistency in the law, calling into question multiple decisions regarding the sex-offender registry.

33

text of the bill was drafted, is not the only source of legislative history to confirm the State's construction. A DOC fiscal estimate (prepared after the bill's drafting) similarly noted the legislation would "expand[] registration time frames" for "individuals with two or more separate sexual assault convictions[.]" DOC, Fiscal Estimate – 1995 Session for 1995 Wis. S.B. 182 (May 25, 1995). After enactment, an information memorandum prepared by the Legislative Council, in discussing the companion statute, noted:

> Act 440 requires DOC . . . to send a bulletin to local law enforcement officials if the agency is going to place or release into the community a person who: (a) is subject to sex offender registration requirements; and (b) has committed crimes or violations covered by the registration statute on two or more occasions.

Wis. Legis. Council Staff, Information Memorandum 96-18 3 (July 12, 1996). The focus of the report, the estimate, and the memorandum is on the number of convictions, without regard to when the judgment of conviction was entered. This focus supports the application of the canon, and nothing in the legislative history indicates members of the legislature understood the phrase "separate occasions" to have a different meaning than it was construed to have in Wittrock and Hopkins. See Wis. Legislature v. Palm, 2020 WI 42, ¶26, 391 Wis. 2d 497, 942 N.W.2d 900 ("[T]he Legislative Reference Bureau never described the added language as changing . . . [the agency's] authority.").

34

B. The Majority Establishes a Rudderless Rule of "I Know It When I See It."

¶103 The majority holds that "when a person is convicted based on charges filed in a single case during the same hearing, then those convictions have not occurred on 'separate occasions.'" Majority op., ¶19. It explicitly "leave[s] for another day whether . . . convictions that only meet one of those two conditions," i.e., convictions occurring in either "a single case" or at "the same hearing" but not both, "have occurred on separate occasions." Id., ¶19 n.5. The majority's holding resolves the issue in this case, but its reasoning leaves future cases in flux and subject to the court's whim rather than its judgment.

¶104 The majority first focuses on temporal proximity in determining whether occasions are separate: "a person must comply with registration requirements for life if the event of conviction occurred at two or more separate (set apart) times." Id., ¶13. Leaving "set apart" without any definition, however, the majority proclaims "[c]onvictions that are filed in a single case and pronounced within the same hearing are not significantly 'set apart' or 'disunited,' and so are not 'separate occasions.'" Id., ¶17. The majority then pivots to a different test for whether occasions are separate, which is not so much grounded in timing as whether the convictions stem from "the same case filing." Id. The majority never resolves this contradiction.

¶105 What if a case involves two sex offenses and the first plea is accepted before a lunch break and the second after? Are

35

those convictions "united by . . . temporal proximity"? See id. Could a prosecutor bring separate cases but have the guilty pleas entered within a few minutes of one another? The majority's reasoning lacks clarity, leaving the impression of a "rule" grounded in nothing more than "I know it when I see it." See Jacobellis v. Ohio, 378 U.S. 184, 197 (1964) (Stewart, J., concurring) ("I have reached the conclusion . . . that under the First and Fourteenth Amendments criminal laws in this area are constitutionally limited to hard-core pornography. I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that.").[13]

¶106 The vagueness in the majority's reasoning could be easily avoided with a clear holding grounded in traditional legal reasoning. Instead, the majority says, in effect, "I know these weren't separate occasions. Maybe in some future case I'll tell you what a separate occasion actually is."

IV. CONCLUSION

¶107 The majority errs in rejecting the prior-construction canon's application in favor of muddling the well-settled meaning of "separate occasions," which this court decisively

---

[13] Similarly unclear is the majority's wedding analogy. See majority op., ¶16. Of course a wedding could be an occasion, and obviously a wedding may have discrete events, e.g., a marriage ceremony and a reception. That various things can happen during a single occasion does not dictate what constitutes a particular occasion.

36

construed nearly 40 years ago to mean "separate convictions" not "separate proceedings." The legislature relied on this meaning when it later used the phrase in a closely related statute. The majority repudiates the fixed meaning of the phrase at the expense of the textually-expressed purpose of the statute, and in derogation of this court's precedent. Effectively rewriting the repeat sex offender statute, the majority trivializes heinous crimes against children, and its decision endangers some of the community's most vulnerable members. I respectfully concur in part and dissent in part.

¶108 I am authorized to state that Chief Justice ANNETTE KINGSLAND ZIEGLER and Justice PATIENCE DRAKE ROGGENSACK join this opinion.